[Sac. No. 3766. In Bank.—February 16, 1927.]

R. C. FARREN, Respondent, v. ALICE B. HOBBS, as Executrix, etc., Appellant.

[1] CONTRACTS—FINDINGS—SUFFICIENCY OF EVIDENCE.—In this action to recover upon two claims, one for boring a well and the other for the purchase price of a pump for the well, it is held that the evidence was sufficient to sustain the findings in favor of the plaintiff.

[2] ID.—SALES—STATUTE OF FRAUDS.—In such case, where the evidence showed that the pump in question was shipped to the purchaser, that he received it at the station, paid the freight on it, had it hauled to his ranch, installed it and tried it out, found that it exhausted the water quickly and would have to be placed deeper, and ordered several extensions for this purpose, that he operated the pump for several months, made no objection to it except that it was not satisfactory in the fact that it used too much power, but did not deny liability under the bills rendered to him until action was brought thereon, the facts and circumstances take the case out of the statute of frauds.

---

(1) 13 C. J., p. 776, n. 96; 35 Cyc., p. 571, n. 65. (2) 27 C. J., p. 239, n. 88, p. 246, n. 50; 35 Cyc., p. 419, n. 52, p. 430, n. 35.

APPEAL from a judgment of the Superior Court of Colusa County. Ernest Weyand, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hadsell, Sweet & Ingalls for Appellant.

C. D. McComish for Respondent.

LANGDON, J.—This is an appeal by the defendant from a judgment against her, in her capacity as executrix of the estate of A. L. Hobbs, deceased, for $4,286.95, in an action upon two assigned claims. One of these claims was for boring a well and the other for the purchase price of a pump for the well.

[1] The appellant, while approaching the matter from many directions, in substance, presents by her brief a determined attack upon the sufficiency of the evidence to sustain findings regarding the making of the contract for the pump and the performance of either the contract for the pump or for the boring of the well by the assignors of plaintiff.

Defendant's decedent, A. L. Hobbs, was the owner of a piece of land in Colusa County, part of which he had planted with trees and vines. In March, 1921, he made a contract with I. E. Florey, a well driller, under which Florey was to bore a 12-inch well upon this land so that a 9-stage, 90-foot pump of Western Well Works manufacture could be installed satisfactorily. The depth of the well was to be determined by Hobbs, who agreed to pay Florey seventy-five per cent of the money due him after the first one hundred feet had been drilled and seventy-five per cent of the amount due him after each additional fifty feet had been drilled and the balance in full when pump "is satisfactorily installed and operated." Florey also agreed to furnish "one twelve-inch number nine State Western Well Works Vertical Turbine pump with sufficient line shaft, line shaft couplings, discharge columns, oil conduits, etc. to place the bowls of the pump approximately 90 feet below the surface of the ground. . . . Pump to be delivered within thirty days." The price of the pump was to be $2,070 installed complete, less two and one-half per cent.

There is no dispute about the execution of the forego-
ing contract. It was in writing and signed by the parties.
After signing this contract, Florey contracted with the
Western Well Works of San Jose for a pump in accordance
with the specifications of his contract with Hobbs. He
then proceeded to bore the well. He bored it twelve inches
in diameter to a depth of 370 feet and then engaged an-
other well digger, Steele, to carry it down at a diameter of
ten inches, this reduction of diameter being decided upon
by Hobbs and the drillers because there was danger of a
collapse in the twelve-inch casing. Steele carried the well
down to 494 feet, according to his testimony, and at this
point Hobbs, after consultation with the drillers, decided
there might be water enough to suit his needs and ordered
Steele to make the perforations to let the water into the
well. Steele did so and cleaned the well of sand and gravel
to the bottom. Presumably the well was now ready for
the pump. At this point Hobbs measured the depth of
the well and, according to his testimony and that of the
man who assisted him, it measured only 472 feet in depth.
The prior measurement of Florey, according to his testi-
mony, had disclosed a greater depth by about twenty feet.
There is some uncertainty about the record as to how this
occurred—perhaps through a mistake of one or the other
of the parties, or perhaps through the filling in of sand
and gravel; but, however it occurred, the discrepancy
caused a dispute over the amount due for boring the well.
Because of this dispute Florey refused to install the pump.

There is some variation in the testimony as to the next
phase of the transaction and we shall recite the evidence
most favorable to the findings made by the trial court.
Mr. Hobbs telephoned to the Western Well Works, person-
ally, and ordered a change in the pump which they were
to supply under their contract with Florey. He ordered
it changed from a 9-stage 90-foot pump to a 12-stage 140-
foot pump and the company agreed to change it at an ad-
ditional price of $585. The company confirmed this new
order in a letter appearing in the transcript which, in part,
reads as follows: "This will confirm our receipt of your
telephone order to change the depth of your pump on con-
tract dated March 17, 1921, from a 9 stage 90 foot pump
to a 12 stage 140 foot pump. The price of this additional

material will be $585.00.'' This letter was dated June 20, 1921. A clerk in the office of the Western Well Works testified that she had a telephone conversation with Hobbs on or about July 1, 1921, in which Hobbs told her that his pump was on his land and that Florey refused to install it. He also stated that Mr. Lavendar was present and that Mr. Lavendar was the man who was to install the pump under the Florey contract, but that Lavendar did not wish to install the pump over Florey's objections unless instructed so to do by the Western Well Works. Lavendar and Hobbs were together at the telephone and after the situation had been explained to the Western Well Works the clerk representing that company consulted with its attorney, who happened to be present, and then asked Hobbs if he would pay the company directly for the pump if it ordered it installed. Hobbs stated that he would do so and in reliance upon this promise Lavendar was called to the telephone and instructed by the company to install the pump. Hobbs was also told that the pump would be billed to him f. o. b. San Jose, and he said he would pay the Western Well Works for it. Lavendar proceeded to install the pump. It was ascertained that more extensions were required, and from time to time Hobbs telegraphed to the Western Well Works for such extensions, which were furnished. The pump and extensions were shipped directly to Hobbs. A statement of his account was sent to Hobbs each month by the Western Well Works, to which he made no objection.

On September 2, 1921, Hobbs wrote to the Western Well Works as follows:

''Yours of the 30th just received and in reply will say that the pump you have in my well is not satisfactory. It is pumping 350 to 150 gallons per min. and using 55 H.P. Using the same amount of H.P. pumping 150 as it does 350. The water does not break. . . . I do not know [what] the pull down is so am not sure at this time whether the trouble is in the quantity of water or the pump. But I do know it is not satisfactory. It would seem to me that it would be well for you to determine the draw down of the water in the well—and why using power enough for 500 gal. and only getting 150—is it up to me to determine this or you. I

feel that it is up to you to prove the efficiency of the pump. So please let me hear from you."

Mr. Lavendar was delegated to collect from Mr. Hobbs the money due to the Western Well Works, but could not make the collection.

Nothing was said in the telephone conversation between Hobbs and the Western Well Works about the disposition of the contract between that company and Florey, and as a matter of fact, when Florey learned that the company had ordered the pump installed at the request of Hobbs, Florey telegraphed to the company as follows: "You ordered pump in over me wire release on contract at once." Florey also went to Hobbs about the matter and Hobbs told him he was dealing directly with the Western Well Works. So much for the formation of the contracts involved here.

Many practical difficulties developed. Quantities of sand and gravel poured into the well and went through the pump with the water and the water supply was inadequate. Hobbs, evidently, attempted to exhaust the sand and gravel through the pump and ran the pump at times during the months of July, August, and September, making no complaint other than the foregoing letter complaining about the amount of horse-power the pump was using, which was made after another demand for payment. In June, 1922, Hobbs had the pump taken out of the well and found it was badly cut and worn by sand and gravel passing through it.

Florey assigned his claim for services in boring the well and the Western Well Works assigned their claim for the pump and extensions to the plaintiff, and during the pendency of the action which followed Hobbs died and his executrix was substituted in his place and stead.

The trial court found that Florey had performed all the conditions of his contract so far as the drilling of the well was concerned and had drilled the well to a depth of 492 feet and completed the same on or about July 1, 1921; that Florey did not install the pump provided for in said contract for the reason that the defendant Hobbs prevented him from doing so; that the wearing out of the parts of the said pump was caused by an improper use thereof by the defendant Hobbs, and that it is not true that the materials or workmanship employed in constructing the said pump were faulty or defective; that it is not true that the

Western Well Works were ever duly advised or at all advised concerning any defects of said pump, appliances, or equipment.

There are also specific findings against the special defenses interposed by defendant, although they are also negatived in the findings above set forth.

[2] The foregoing evidence justifies the finding that a contract was made between Hobbs and the Western Well Works for the purchase and sale of a pump and appliances. The objection of appellant that such contract was not in writing is met by the evidence in the record showing that the pump was shipped to Hobbs at Arbuckle; he received it at the station, paid the freight on it, had it hauled to his ranch, installed it and tried it out, found that it exhausted the water quickly and would have to be placed deeper, and ordered several extensions for this purpose; that he operated the pump for several months, made no objection to it except the letter from which we have quoted herein, and did not deny liability under the bills rendered to him until the action was brought. These facts and circumstances take the case out of the statute of frauds.

An attempt is made by appellant to fasten upon either Western Well Works or Florey the responsibility for the infiltration of sand and gravel which ruined the pump and made the well unsatisfactory. Assuredly, this was not a risk assumed by the Western Well Works, nor a danger against which they contracted. Florey has testified that he cleaned out the well when Hobbs directed that it be perforated for water and the court has found that Florey performed his contract in the matter of drilling the well. The subsequent danger of sand and gravel pouring into the well appears from the record to be one which might be anticipated perhaps for years after the well was completed and was one which the owner of the land must necessarily guard against.

The respondent claims, and the record and findings bear him out, that the pump was ruined by operation under improper conditions, and that its condition was not chargeable in any way to any defects for which Western Well Works would be liable under a manufacturer's warranties.

The appellant's argument is divided and subdivided, but many of the matters urged are merely attacks from different angles upon the same ultimate facts found by the court, and there is no necessity for discussing these subdivisions separately. The foregoing discussion of the findings and the evidence supporting them disposes of every objection made by appellant.

The judgment appealed from is affirmed.

Curtis, J., Preston, J., Seawell, J., Richards, J., Waste, C. J., and Shenk, J., concurred.